**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE HOME LOAN SERVICING SOLUTIONS, LTD. SECURITIES LITIGATION | Master File No. 0:16-cv-60165 (WPD) |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of June 9, 2017 (the "Stipulation"), is entered into by and between (a) West Palm Beach Police Pension Fund ("WPB Police"), the City of Fort Lauderdale Police and Firefighters' Retirement System ("FTL P&F"), and The Police Retirement System of St. Louis ("St. Louis Police," and together with WPB Police and FTL P&F, "Lead Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (defined below); and (b) defendants Home Loan Servicing Solutions, Ltd. ("HLSS"), William C. Erbey ("Erbey"), John P. Van Vlack ("Van Vlack"), and James E. Lauter ("Lauter") (collectively, the "Individual Defendants" and, together with HLSS, "Defendants," and together with Lead Plaintiffs, the "Settling Parties"), by and through their respective undersigned counsel. Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally and forever compromise, settle, release, resolve, and dismiss with prejudice all of the Released Claims (as defined below).[1]

WHEREAS:

A. On January 29, 2015, this Action was commenced in the United States District Court for the Southern District of New York, styled *Adam Oliveira v. Home Loan Servicing*

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein. The singular forms of nouns and pronouns include the plural and vice versa.

*Solutions, Ltd.*, *et al.*, Case No. 1:15-cv-00652-VM. By Order dated April 28, 2015, Judge Victor Marrero of the Southern District of New York appointed WPB Police, FTL P&F, and St. Louis Police as Lead Plaintiffs for the Action and approved Lead Plaintiffs' selection of Saxena White P.A. ("Saxena White") as Lead Counsel.

B. On July 17, 2015, Lead Plaintiffs filed and served their Consolidated Class Action Complaint (the "Consolidated Complaint") asserting claims against the Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Consolidated Complaint alleges, among other things, that Defendants made materially false and misleading statements and omitted material information regarding the nature of the relationship and business dealings between HLSS, a company created by Defendant Erbey to acquire mortgage servicing assets, and Ocwen Financial Corporation ("Ocwen"), the largest nonbank mortgage servicer in the country and HLSS's main source for purchasing mortgage servicing assets. Specifically, the Consolidated Complaint alleges, among other things, that HLSS and Ocwen engaged in related-party transactions that were allegedly approved by Defendant Erbey – who was founder, former Chairman, and had an ownership interest in both companies – in violation of Defendants' representations that Erbey recused himself from negotiations and approvals of transactions between HLSS and Ocwen. The Consolidated Complaint further alleges that the price of HLSS common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions, and that HLSS's stock price declined when the truth regarding Defendants' alleged misrepresentations was revealed.

C. On October 5, 2015, the Securities and Exchange Commission ("SEC") issued a Cease and Desist Order involving HLSS (the "SEC Order"). The SEC Order was the culmination of an investigation that included multiple allegations regarding HLSS.

D. On November 9, 2015, the Lead Plaintiffs filed an Amended Consolidated Class Action Complaint (the "Amended Consolidated Complaint") which included references to the SEC Order and attached the SEC Order as an exhibit.

E. On January 27, 2016, Judge Marrero transferred this Action from the Southern District of New York to the Southern District of Florida.

F. On February 11, 2016, Erbey and the remaining Defendants each separately moved to dismiss the Amended Consolidated Complaint. Lead Plaintiffs responded to both of these motions on March 16, 2016, and Defendants filed reply briefs in support of their motions on April 8, 2016.

G. On June 6, 2016, the Court issued its Omnibus Order on Motions to Dismiss, which granted in part and denied in part Defendants' motions to dismiss. Specifically, the Court found that Plaintiffs had properly pled claims concerning related party transactions. However, the Court narrowed the scope of the case by dismissing all remaining claims, including allegations that Defendants misrepresented to investors that: (1) Ocwen had adequate servicing capabilities; (2) no legal or contingent matters existed that would materially impact HLSS's business or financials; and (3) HLSS's accounting practices and procedures complied with United States Generally Accepted Accounting Practices ("GAAP"). On August 2, 2016, Erbey and the remaining Defendants filed their answers to the Amended Consolidated Complaint.

H. On August 8, 2016, the Court entered an Order Setting Trial Date & Discovery Deadlines, Referring Case to Mediation & Referring Discovery Motions to United States

Magistrate Judge (the "Scheduling Order"). The Scheduling Order set deadlines for, among other things, the discovery cut-off, Lead Plaintiffs' motion for class certification, and the deadline for the filing of any summary judgment motions.

I. Discovery commenced in September 2016, and involved extensive work by all parties. For example, Lead Plaintiffs served HLSS and the Individual Defendants with discovery requests on September 9, 2016. Thereafter, Lead Plaintiffs served subpoenas *duces tecum* or otherwise pursued discovery on numerous third parties including, but not limited to, Ocwen and Altisource Portfolio Solutions, S.A. (another Ocwen-related company formerly chaired by Defendant Erbey). The Defendants served document requests on Lead Plaintiffs and Lead Plaintiffs' investment managers. The parties also conducted several meet and confers related to the scope of the document requests, and Lead Counsel reviewed hundreds of thousands of documents produced by Defendants and third parties. Over 750,000 documents, consisting of millions of pages, were produced during discovery.

J. In early 2017, as the parties were continuing to pursue extensive fact discovery, they agreed to begin exploring the possibility of resolving the Action on mutually agreeable terms. To that end, the parties engaged retired United States District Judge Layn Phillips as a neutral mediator and commenced a mediation process. Despite a day-long mediation on March 8, 2017 resulting in an impasse, the parties continued to conduct numerous telephonic discussions with Judge Phillips in an effort to resolve the litigation. Following extensive arm's-length negotiations under Judge Phillips' supervision, on May 10, 2017, the Settling Parties reached an agreement in principle to settle the Action for the benefit of the Settlement Class.

K. This Stipulation (together with the Supplemental Agreement referred to in ¶ 36 below) reflects the final and binding agreement between the Settling Parties.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiffs (individually and on behalf of all other members of the Settlement Class) and the Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Settling Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiffs' Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

**DEFINITIONS**

1. As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

a) "Action" means the consolidated securities class action *In re Home Loan Servicing Solutions, Ltd., Securities Litigation,* Case 0:16-cv-60165 (WPD), and includes all actions consolidated therein.

b) "HLSS" or the "Company" means Home Loan Servicing Solutions, Ltd.

c) "Authorized Claimant" means a Settlement Class Member who or which submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

d) "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

e) "Claim Form" or "Proof of Claim Form" means the form, substantially in the form found in the Notice of Settlement, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

f) "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

g) "Claims Administrator" means the firm retained by Lead Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

h) "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

i) "Class Period" means the period from February 28, 2012 through January 22, 2015, inclusive.

j) "Court" means the United States District Court for the Southern District of Florida.

k) "Defendants" means HLSS and the Individual Defendants.

l) "Defendants' Counsel" means the law firms Weil, Gotshal & Manges LLP and Sullivan & Cromwell LLP.

m) "Defendants' Releasees" means the Individual Defendants, in their individual or official capacities, and HLSS, including its current and former parents, affiliates and subsidiaries, and each of the Defendants' respective current and former

Officers, directors, agents, representatives, advisors, consultants, successors (including New Residential Investment Corp.), predecessors, assigns, assignees, partnerships, partners, trustees, trusts or holdings of personal or family assets, employees, immediate family members, insurers and reinsurers, and attorneys, in their capacities as such.

n) "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions subsequent specified in ¶ 32 of this Stipulation have been met and have occurred or have been waived.

o) "Escrow Account" means an account maintained at Seaside National Bank & Trust, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

p) "Escrow Agent" means Saxena White P.A.

q) "Escrow Agreement" means the agreement setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

r) "Excluded Claims" means (i) the securities fraud claims asserted in (a) *Broadway Gate Master Fund, Ltd. v. Ocwen Financial Corporation*, No. 16-CV-80056-WPD (S.D. Fla.); (b) *In re Altisource Portfolio Solutions, S.A. Securities Litigation*, No. 14-81156-CIV-WPD; (c) *In re Ocwen Financial Corporation Securities Litigation*, No. 14-CV-81057-WPD (S.D. Fla.); (d) *In re Ocwen Derivative Action Litigation*, No. 14-CV-81601-WPD (S.D. Fla.); (e) *City of Cambridge Retirement System v. Altisource Asset Management Corporation, et al.*, No. 15-CV-00004-WAL-GWC (D.V.I.); and (f) *Martin v. Altisource Residential Corporation, et. al.*, No. 15-CV-00024-AET-GWC (D.V.I.), in each above action against the defendants in those actions as of the date of this Stipulation; (ii) any claims relating to the enforcement of the Settlement; (iii) any claims

HLSS or any Individual Defendant may have against any party other than any of Plaintiffs' Releasees; (iv) any claims that HLSS or any other Defendant in the Action may have under or relating to any policy of liability, any other insurance policy, or any contractual or statutory right to indemnification; or (v) any claims of any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court as valid.

s) "Final," with respect to the Judgment or any other court order means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

t) "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

u) "Lead Counsel" means Saxena White P.A.

v) "Lead Plaintiffs" means the West Palm Beach Police Pension Fund, the City of Fort Lauderdale Police and Firefighters' Retirement System, and the Police Retirement System of St. Louis.

w) "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action, for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

x) "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

y) "Notice" means the Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (ii) Settlement Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be mailed to Settlement Class Members.

z) "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Settlement Class; (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account; and (iii) determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

aa) "Person" means any individual or business or corporate entity, including without limitation any corporation, corporate division, corporate subsidiary, general

partnership, limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government, government agency, or political subdivision.

bb) "Plaintiffs' Releasees" means Lead Plaintiffs and Lead Counsel, and all other Settlement Class Members, and their current and former parents, affiliates and subsidiaries, and each of their respective current and former Officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts or holdings of personal or family assets, employees, immediate family members, insurers and reinsurers, and attorneys, in their capacities as such.

cc) "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

dd) "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

ee) "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

ff) "Released Defendants' Claims" means any and all claims (including Unknown Claims), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen

or unforeseen, whether individual or class in nature, whether arising under federal or state statutory, common or administrative law, or any other law, rule, or regulation, whether foreign or domestic, that arise out of, or are based upon the institution, prosecution, or settlement of the claims against Defendants in the Action, except for claims relating to the enforcement of the Settlement or any claims against any person or entity who or which submits a request for exclusion that is accepted by the Court as valid. For the avoidance of doubt, nothing in the paragraph is intended to release in any way payments or obligations with respect to mortgages where HLSS (or its affiliates) own or control the servicing rights.

gg) "Released Plaintiffs' Claims" means any and all claims (including Unknown Claims), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal or state statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, that Lead Plaintiffs or any other member of the Settlement Class: (i) asserted in any of the complaints filed in the Action; or (ii) could have been, or in the future can or might have been, asserted in the Action or in any other action or in any other forum that have arisen, arise now or hereafter arise out of, are based upon, or relate, directly or indirectly, in any manner, or are in consequence of any of the facts,

allegations, transactions, matters, events, practices, conduct, disclosures, nondisclosures, occurrences, representations, statements, acts or omissions or failures to act that were involved, set forth, or referred to in any of the complaints filed in the Action, and that relate to trading of HLSS common stock during the Class Period, including without limitation, any claims related to disclosures or omissions allegedly made or not made by Defendants or any other Defendants' Releasees, or that otherwise would have been barred by *res judicata* had the Action been litigated to a final judgment. Released Plaintiffs' Claims include all rights of appeal from any prior decision of the Court in the Action. Released Plaintiffs' Claims do not include any of the Excluded Claims.

hh) "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiffs' Releasees.

ii) "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

jj) "Settlement" means the settlement between Lead Plaintiffs and the Defendants on the terms and conditions set forth in this Stipulation.

kk) "Settlement Amount" means $6,000,000.

ll) "Settlement Class" means all persons or entities who or which purchased or otherwise acquired HLSS common stock during the period from February 28, 2012 through January 22, 2015, inclusive (the "Class Period"). Excluded from the Settlement Class are the Defendants; the affiliates and subsidiaries of HLSS, Ocwen, Altisource Portfolio Solutions, S.A., Altisource Residential Corporation, Altisource Asset Management Corporation, and New Residential Investment Corp.; members of the immediate family of each of the Individual Defendants; the Officers and directors of HLSS, Ocwen, Altisource Portfolio Solutions, S.A., Altisource Residential Corporation,

Altisource Asset Management Corporation, and New Residential Investment Corp.; the heirs, successors, and assigns of any excluded person or entity; and any entity in which any excluded person has or had during the Class Period a controlling interest. Also excluded from the Settlement Class are any persons or entities that exclude themselves by submitting a request for exclusion that is accepted by the Court as valid.

mm) "Settlement Class Member" or "Class Member" means each person and entity who or which is a member of the Settlement Class.

nn) "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

oo) "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

pp) "Settling Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the Settlement Class.

qq) "Summary Notice" means the Summary Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (ii) Settlement Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 2 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

rr) "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) in connection with the Settlement Fund, including on any income earned by the Settlement Fund; and (ii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

ss) "Unknown Claims" means any Released Plaintiffs' Claims which any Lead Plaintiff or other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and the Defendants shall expressly waive, and each of the other Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is or has an effect which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs, the other Settlement Class Members, and/or the Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which they or any of them now know or believe to be true with respect to the subject matter of the Released Plaintiffs' Claims and the Released Defendants' Claims, but Lead Plaintiffs and the Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date of the Settlement and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Plaintiffs' Claims

and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and whether or not the same were known to Lead Plaintiffs, the other Settlement Class Members, or the Defendants, as applicable, at any time. Lead Plaintiffs and the Defendants acknowledge, and each of the other Settlement Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

**CLASS CERTIFICATION**

2. Solely for purposes of the Settlement and for no other purpose, the Defendants stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) appointment of Plaintiffs as the Class Representatives for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

**PRELIMINARY APPROVAL OF SETTLEMENT**

3. Following execution of this Stipulation and by no later than June 9, 2017, Lead Plaintiffs will move for preliminary approval of the Settlement, certification of the Settlement Class for settlement purposes only, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by the Defendants. Concurrently with the motion for preliminary approval, Lead Plaintiffs shall apply to the Court for, and the Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

**RELEASE OF CLAIMS**

4. The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action; and (ii) the payments and Releases provided for herein.

5. Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs' Releasees shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees. Upon the Effective Date of the Settlement, Plaintiffs' Releasees shall be deemed to have covenanted, and by operation of the Judgment shall have covenanted not to commence, institute, maintain or prosecute any or all of the Released Plaintiffs' Claims against any or all of the Defendants or other Defendants' Releasees. This release shall not apply to any of the Excluded Claims.

6. Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, the Defendants, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining any or all of the Released Defendants' Claims against any of the Plaintiffs'

Releasees. This release shall not apply to any Excluded Claims or claims against any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court as valid.

7. Notwithstanding ¶¶ 5-6 above, nothing in the Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of this Stipulation or the Judgment. Also, for the avoidance of doubt, this Stipulation does not (a) release any claims (including any claims under or relating to any policy of liability, any other insurance policy or any contractual or statutory rights to indemnification) that HLSS or any other Defendant may have against any Person other than any of the Plaintiffs' Releasees or (b) release any insurer, co-insurer, excess insurer, or re-insurer from any obligation owed to HLSS or any other Defendant for indemnity or coverage under or relating to any policy of liability or other insurance policy.

**THE SETTLEMENT CONSIDERATION**

8. In consideration of the settlement of the Released Plaintiffs' Claims against the Defendants and the other Defendants' Releasees, HLSS shall cause the Settlement Amount to be deposited into the Escrow Account within fifteen (15) business days following the date of entry by the Court of an order preliminarily approving this Settlement, provided that Lead Counsel has first provided Defendants' Counsel with: (a) a W-9 for the Escrow Account, and (b) wire or check mailing instructions for payment to the Escrow Account. The Settlement Amount represents the entirety of the Defendants' financial obligations under this Stipulation and in connection with this Settlement, meaning that it includes all attorneys' fees and expenses, Notice and Administration Costs, Taxes, and costs of any kind whatsoever associated with the Settlement. The full payment of the entire Settlement Amount into the Escrow Account in accordance with this paragraph fully discharges the Defendants' financial obligations under this

Stipulation and in connection with the Settlement, meaning that none of the Defendants shall have any other obligation to make any payment into the Escrow Account or to any Settlement Class Member, or any other Person, under this Stipulation or as part of the Settlement once the payment described in this paragraph has been made. For avoidance of doubt, under no circumstances shall the total to be paid by or on behalf of the Defendants under this Stipulation exceed the Settlement Amount.

**USE OF SETTLEMENT FUND**

9. The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 19-30 below. Defendants' Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation or its implementation, administration, or interpretation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state, or local returns. For the avoidance of doubt, nothing in the foregoing sentence alters HLSS's obligations under this Stipulation with respect to the payment of the Settlement Amount into the Escrow

Account, as set forth in ¶ 8 above, and provision of shareholder transfer records, as set forth in ¶ 20 below.

10. Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date of the Settlement. All funds held by the Escrow Agent shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

11. The parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Lead Counsel shall also be

responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Defendants' Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, the Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12. All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent without further order of the Court. Neither the Defendants nor the other Defendants' Releasees shall have responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes. The Settlement Fund shall indemnify and hold harmless each of the Defendants and the other Defendants' Releasees for Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

13. The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date of the Settlement, no Defendant, Defendants' Releasee, insurance carrier, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the

amounts to be paid to Authorized Claimants from the Net Settlement Fund, absent a showing of fraud in the inducement or similar cause of action.

14. Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from the Defendants or further order of the Court, all Notice and Administration Costs actually incurred up to the sum of $300,000. Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent. Prior to the Effective Date of the Settlement, all such Notice and Administration Costs in excess of $300,000 shall be paid from the Settlement Fund subject to prior approval of the Court. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs incurred, paid or payable, including any related fees, shall not be returned or repaid to the Defendants, their insurance carriers, any of the other Defendants' Releasees, or any other person or entity who or which paid any portion of the Settlement Amount.

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

15. Lead Counsel will apply to the Court for an award of attorneys' fees to be paid solely from (and out of) the Settlement Fund. Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, to be paid solely from (and out of) the Settlement Fund. Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the

subject of any agreement between the Defendants and Lead Plaintiffs other than what is set forth in this Stipulation.

16. Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel solely from the Settlement Fund immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final. Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) the Settlement is canceled and terminated as provided in ¶¶ 34-36 below; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final. An award of attorneys' fees and/or Litigation Expenses to Plaintiffs' Counsel is not a material term of this Stipulation, is not a condition of the Settlement embodied herein, and shall not affect the finality of any Judgment. Neither Lead Plaintiffs nor Lead Counsel may cancel, terminate, or rescind the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

17. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action. Neither the Defendants nor any other

Defendants' Releasees shall have any responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.

18. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Escrow Account. Neither the Defendants nor any other Defendants' Releasees shall have any responsibility for the payment of attorneys' fees or Litigation Expenses to Plaintiffs' Counsel beyond HLSS's obligation to cause the Settlement Amount to be deposited into the Escrow Account as set forth in ¶ 8 above.

**NOTICE AND SETTLEMENT ADMINISTRATION**

19. As part of the Preliminary Approval Order, Lead Plaintiffs shall seek appointment of a Claims Administrator. The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court. Other than HLSS's obligation to provide its shareholder records as provided in ¶ 20 below, none of the Defendants, nor any other Defendants' Releasees, shall have any involvement in or any responsibility, authority or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiffs, any other Settlement Class Members or Lead Counsel in connection with the foregoing. Defendants and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

20. In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable

effort. Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court. For the purposes of identifying and providing notice to the Settlement Class, within five (5) business days of the date of entry of the Preliminary Approval Order, HLSS shall provide or cause to be provided to the Claims Administrator in electronic searchable form, such as Excel (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator), data from shareholder transfer records containing the names and addresses of record holders who purchased or otherwise acquired HLSS common stock during the Class Period.

21. Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve upon the appropriate state official of each state in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq*. ("CAFA"). Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least fourteen (14) calendar days before the Settlement Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA § 1715(b).

22. The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto, or in such other plan of allocation as the Court approves). Upon receiving any request(s) for exclusion pursuant to the Notice, Lead Counsel shall provide Defendants' Counsel with copies of such request(s) for exclusion and any documentation

accompanying them by email within three (3) business days from receipt but in all events no later than fourteen (14) calendar days before the Settlement Hearing.

23. The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action. No Defendant, or any other Defendants' Releasees, shall have any involvement with or liability, obligation or responsibility whatsoever for the application of the Court-approved plan of allocation.

24. Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

25. Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Defendant, or any other Defendants' Releasees, shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.

26. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim. No discovery of any Person shall be allowed on the allegations or merits of this Action or on the merits of the Settlement in connection with the processing of Claim Forms.

27. Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date of the Settlement has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

28. Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members. All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

29. No person or entity shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any other agent designated by Lead Counsel, or the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court. Lead Plaintiffs and the Defendants, and their respective counsel, and Lead Plaintiffs' damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

30. All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment. All Settlement Class Members and Settling Parties expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT

31. If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

32. The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

a) the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

b) the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

c) none of the Defendants have exercised their option to terminate the Settlement pursuant to the provisions of ¶ 35 or ¶ 36 of this Stipulation;

d) Lead Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of ¶ 35 of this Stipulation; and

e) the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final.

33. Upon the occurrence of all of the events referenced in ¶ 32 above, any and all remaining interest or right, if any, of any Defendant, Defendants' Releasee, insurance carrier, or any other person or entity who or which funded the Settlement Amount in or to the Settlement Fund, shall be absolutely and forever extinguished and the Releases herein shall be automatically effective.

34. If (i) any of the Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date of the Settlement otherwise fails to occur, then:

a) The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

b) Lead Plaintiffs and the Defendants shall revert to their respective litigation positions in the Action as of May 10, 2017, and the Settlement Class will be decertified.

c) The terms and provisions of this Stipulation, with the exception of this ¶ 34 and ¶¶ 14, 16, 37 and 58, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

d) Within five (5) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 16 above), less any Notice and Administration Costs actually incurred, paid or payable up to the sum of $300,000 and less any Taxes paid, due or owing, shall be refunded by the Escrow Agent to HLSS (or such other persons or entities that Defendants' Counsel may direct in writing). In the event that the funds received by Lead Counsel consistent with ¶ 16 above have not been refunded to the Settlement Fund within the five (5) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to HLSS (or such other persons or entities that Defendants' Counsel may direct) immediately upon their deposit into the Escrow Account consistent with ¶ 16 above. At the request of Defendants' Counsel, Lead Counsel or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds within five (5) business days of receipt of such proceeds, after deduction of any reasonable fees or expenses incurred in connection with such application for a tax refund, to HLSS (or such other persons or entities that Defendants' Counsel may direct). Notwithstanding any of

the foregoing in this ¶ 34(d), the repayment obligations of the Escrow Agent and Lead Counsel pursuant to this paragraph shall not be triggered until receipt of the written repayment instructions from Defendants' Counsel.

35. It is further stipulated and agreed that the Defendants, provided they unanimously agree amongst themselves, and Lead Plaintiffs, provided they unanimously agree amongst themselves, shall each have, in their respective sole and absolute discretion, the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Settling Parties within five (5) days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Eleventh Circuit or the United States Supreme Court, and the provisions of ¶ 34 above shall apply. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment, and shall not be grounds for termination or rescission of the Settlement.

36. In addition to the grounds set forth in ¶ 35 above, HLSS shall have, in its sole and absolute discretion, the unilateral right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in the confidential supplemental agreement between the Defendants and Lead Plaintiffs (the "Supplemental Agreement"), in accordance with the terms of that agreement.

The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiffs and the Defendants concerning its interpretation or application, in which event the Settling Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

**NO ADMISSION OF WRONGDOING**

37. Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

b) shall be offered against any of the Plaintiffs' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

c) shall be offered or construed as evidence that a class should or should not be certified in the Action if the Settlement is not consummated; or

d) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Settling Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

38. Notwithstanding Paragraph 37 above, the Defendants' Releasees may file or use this Stipulation of the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, statute of limitations, statutes of repose, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted to them.

## MISCELLANEOUS PROVISIONS

39. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

40. The Defendants warrant that, as to the payments made or to be made by or on behalf of them, at the time of entering into this Stipulation and at the time of such payment they, or to their knowledge any persons or entities contributing to the payment of the Settlement Amount, were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This representation is made by each of the Defendants and not by their counsel.

41. In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of the Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and is required to be, and has been, returned to HLSS, and such returned amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiffs, Lead Plaintiffs and the Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment entered in favor of the Defendants and the other Releasees pursuant to this Stipulation, in which event the Releases and Judgment shall be null and void, and Lead Plaintiffs and the Defendants shall revert to their respective litigation positions in the Action as provided in ¶ 34 above and any cash amounts in the Settlement Fund not already returned to HLSS (less any Taxes paid, due or owing with respect to the Settlement Fund and less any

Notice and Administration Costs actually incurred, paid or payable up to the sum of $300,000) shall be returned as provided in ¶ 34 above.

42. The Settling Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiffs and any other Settlement Class Members against the Defendants' Releasees with respect to the Released Plaintiffs' Claims. Accordingly, the Settling Parties and their respective counsel agree not to assert in any judicial forum that this Action was brought by Lead Plaintiffs or defended by the Defendants in bad faith or without a reasonable basis. The Settling Parties and their respective counsel agree that none of the Lead Plaintiffs, Defendants or any of the other Releasees shall assert any claims of any violation of Rule 11 in connection therewith. The Settling Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Settling Parties, including through a mediation process supervised and conducted by Judge Layn Phillips (Ret.), and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

43. While retaining their right to deny any wrongful conduct or liability and that the claims asserted in the Action were meritorious, the Defendants and their counsel, in any statement made to any media representative (whether or not for attribution), will not assert that the Action was commenced or prosecuted in bad faith, nor will comment upon whether the Action was commenced and prosecuted in good faith. Similarly, while retaining their right to deny that the defenses asserted in the Action were meritorious, Lead Plaintiffs and their counsel, in any statement made to any media representative (whether or not for attribution), will not assert that the Action was defended in bad faith, nor will they comment upon whether the Action was

defended in good faith. In all events, Lead Plaintiffs, the Defendants, and their respective counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged. Lead Plaintiffs and the Defendants agree that there will be no public announcements regarding this Settlement until: (a) HLSS has announced or disclosed it; or (b) five (5) business days after the filing of this Stipulation with the Court, whichever comes first.

44. The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of Lead Plaintiffs (or their successor(s)-in-interest) and the Defendants (or their successor(s)-in-interest).

45. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

46. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

47. The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

48. This Stipulation and the Supplemental Agreement constitute the entire agreement among Lead Plaintiffs and the Defendants concerning the Settlement and this Stipulation and its exhibits, and supersede all prior and contemporaneous oral or written agreements, promises, representations, understandings, and other communications between the Settling Parties relating thereto. All parties hereto acknowledge that no other agreements, representations, warranties, or inducements have been made or relied upon by any party concerning this Stipulation, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

49. This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tiff image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

50. This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Settling Parties, including any and all Releasees, and any corporation, partnership, or other entity into or with which any Settling Party or Releasee has merged, consolidated or reorganized or may merge, consolidate or reorganize.

51. The construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Florida without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

52. Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

53. This Stipulation and/or any term(s) hereof shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the

result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

54. All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

55. Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use reasonable efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

56. If any Settling Party is required to give notice to another Settling Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt. Notice shall be provided as follows:

If to Lead Plaintiffs or Lead Counsel:

Saxena White P.A.
Attn: Joseph E. White, III, Esq.
5200 Town Center Circle, Suite 601
Boca Raton, Florida 33486
Phone: (561) 394-3399
Email: jwhite@saxenawhite.com

If to the Defendants:

Weil, Gotshal & Manges LLP
Attn: Richard Slack, Esq.
767 Fifth Ave.
New York, New York 10153
Telephone: (212) 310-8000
Email: richard.slack@weil.com

Sullivan & Cromwell LLP
Attn: Darrell S. Cafasso, Esq.

125 Broad Street
New York, New York 10004
Telephone: (216) 558-4000
Email: cafassod@sullcrom.com

57. Except as otherwise provided herein, each Settling Party shall bear its own costs.

58. Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date of the Settlement occurs, the Settling Parties and their counsel shall use their efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential.

59. All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

60. No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Settling Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys as of June 9, 2017.

**SAXENA WHITE P.A.**

Maya Saxena (Fla. Bar No. 0095494)
msaxena@saxenawhite.com
Joseph E. White III (Fla. Bar No. 621064)
jwhite@saxenawhite.com
Lester R. Hooker (Fla. Bar No. 0032242)
lhooker@saxenawhite.com
Brandon T. Grzandziel (Fla. Bar No. 0058732)
brandon@saxenawhite.com
5200 Town Center Circle, Suite 601
Boca Raton, Florida 33486
Phone: (561) 394-3399
Fax: (561) 394-3382

-and-

Steven B. Singer
ssinger@saxenawhite.com
4 West Red Oak Lane, Suite 312
White Plains, NY 10604
Phone: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs and the Class*

**WEIL, GOTSHAL & MANGES LLP**

Jonathan Polkes
jonathan.polkes@weil.com
Richard W. Slack
richard.slack@weil.com
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants HLSS, Van Vlack, and Lauter*

**SULLIVAN & CROMWELL LLP**

Darrell S. Cafasso /jam

Darrell S. Cafasso
cafassod@sullcrom.com
125 Broad Street
New York, NY 10004
Phone: (216) 558-4000
Fax: (212) 558-3588

*Attorneys for Defendant Erbey*