**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE HOME LOAN SERVICING SOLUTIONS, LTD. SECURITIES LITIGATION | Master File No. 0:16-cv-60165 (WPD) <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**THE PROPOSED SETTLEMENT, THE PLAN OF ALLOCATION,**
**AND LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES**
<u>**AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**</u>

## <u>TABLE OF CONTENTS</u>

MOTION ............................................................................................................................1

MEMORANDUM OF LAW .............................................................................................1

I.      Preliminary Statement .............................................................................................1

II.     The Court Should Approve the Settlement...............................................................2

        A.     The Settlement is the Result of Good Faith, Arm's-Length
              Negotiations..................................................................................................3

        B.     Application of the *Bennett* Factors Supports Approval of the
              Settlement ....................................................................................................4

              1.     The Likelihood of Success at Trial Supports Final Approval....................4

              2.     The Settlement Amount is Within the Range of
                      Reasonableness ...................................................................................6

              3.     The Complexity, Expense and Likely Duration of
                      Continued Litigation Strongly Support Approval....................................6

               4.     The Reaction of the Class Strongly Supports Approval............................7

               5.     The Stage of the Proceedings Strongly Supports Approval .....................7

        C.     The Recommendations of Experienced Counsel and Lead Plaintiffs
               Heavily Favor Approval of the Settlement..................................................8

III.    The Plan of Allocation Should Be Approved ..............................................................8

IV.    Certification of a Settlement Class is Warranted ........................................................9

V.     Notice to the Class Satisfied Rule 23 and Due Process.............................................9

VI.    Lead Counsel's Fee and Expense Request is Fair and Reasonable.................................10

        A.     A Reasonable Percentage of the Recovery is the Appropriate
              Method for Awarding Attorneys' Fees ......................................................11

        B.     The *Camden* Factors Confirm that the Fee Request is Fair and
              Reasonable..................................................................................................11

              1.     The Time and Labor Required Support the Requested Fee.....................12

               2.     The Difficulty of the Issues Support the Requested Fee .........................13

               3.     The Reaction of Lead Plaintiffs and the Class Support the
                      Request ..............................................................................................14

               4.     The Skill, Experience, Reputation and Ability of the
                      Attorneys Support the Fee Request ....................................................15

               5.     The Preclusion of Other Employment Supports the Fee
                      Request ..............................................................................................15

               6.     The Customary and Contingent Nature Support the Request..................15

i

7.      The Time Required to Reach the Settlement Supports the Fee Request ............................................................................16

8.      The Amount Involved and Results Achieved Support the Request ...........................................................................................17

9.      The Undesirability of the Case Supports the Fee Request ......................17

10.    The Nature and Length of the Professional Relationship with the Client Supports the Fee Request ...............................17

11.    The Requested Fee Is Fair and Reasonable Compared to Similar Actions .......................................................................18

C.     Lead Counsel's Expense Reimbursement Request is Fair and Reasonable ...........................................................................................19

D.     Lead Plaintiffs' Request for Reimbursement of Costs Directly Related to Their Representation of the Settlement Class is Fair and Reasonable ...........................................................................................20

VII.   Conclusion ................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.,*
   454 F. Supp. 2d 1185 (S.D. Fla. 2006)..............................................................11, 19

*Behrens v. Wometco Enterprises, Inc.,*
   118 F.R.D. 534 (S.D. Fla. 1988)..........................................................................16

*Bennett v. Behring Corp.,*
   737 F.2d 982 (11th Cir. 1984) ..............................................................................3

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ............................................................................................11

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
   946 F.2d 768 (11th Cir. 1991) ......................................................... 11, 12, 15, 18

*Canupp v. Sheldon,*
   2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) .....................................................3

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ...........................................................................3, 8

*David v. Am. Suzuki Motor Corp.,*
   2010 WL 1628362 n.15 (S.D. Fla. Apr. 15, 2010) .............................................15

*Dura Pharms. v. Broudo,*
   544 U.S. 336 (U.S. 2005),. ...................................................................................9

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974).............................................................................................10

*Garst v. Franklin Life Ins. Co.,*
   1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) ..................................6, 7

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ....................................................7, 16

*In re Carter's, Inc. Sec. Litig.,*
   2012 WL 12877943 (N.D. Ga. May 31, 2012) ...................................................14

*In re Checking Account Overdraft Litig.,*
   830 F. Supp. 2d 1330 (S.D. Fla. 2011)....................................................3, 4, 6, 17

*In re Chicken Antitrust Litig. Am. Poultry,*
   669 F.2d 228 (5th Cir. 1982) ................................................................................8

*In re China Sunergy Sec. Litig.,*
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ......................................................6

*In re Friedman's Inc. Sec. Litig.,*
   2009 WL 1456698 (N.D. Ga. May 22, 2009)......................................................16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................8

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...............................................8

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) .................................................................13

*In re Managed Care Litig.*,
  2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ...........................................18

*In re NU Skin Enters., Inc.*,
  2016 WL 6916486 (D. Utah Oct. 13, 2016) ...............................................14

*In re Sterling Fin. Corp. Sec. Class Action*,
  2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) .............................................13

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...............................................8, 15

*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) .................................................................14

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) ...................................................................16

*Leverso v. SouthTrust Bank of Ala., N.A.*,
  18 F.3d 1527 (11th Cir. 1994) .....................................................................2

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  762 F.3d 1248 (11th Cir. 2014) .................................................................14

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ...................................................................................11

*Millsap v. McDonnell Douglas Corp.*,
  2003 U.S. Dist. LEXIS 26223 (N.D. Okla. May 28, 2003) ........................17

*Norman v. Hous. Auth. of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) .................................................................15

*Pinto v. Princess Cruise Lines, Ltd*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007), ...............................................14, 16

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ........................................................passim

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................16

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) .................................................................4

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 U.S. Dist. LEXIS 144133, at *26 (S.D. Fla. Oct. 14, 2016) .................................passim

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................................10

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) .....................................................................................13, 18

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ......................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(4) .........................................................................................................1, 20

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................passim

**Other Authorities**

W. Rubenstein, A. Conte, & H. Newberg,
   4 *Newberg on Class Actions* (4th ed. 2010) ......................................................................3

## MOTION

Lead Plaintiffs The City of Fort Lauderdale Police and Firefighters' Retirement System ("Fort Lauderdale"), West Palm Beach Police Pension Fund ("West Palm Beach"), and The Police Retirement System of St. Louis ("St. Louis," and together with West Palm Beach and Fort Lauderdale, "Plaintiffs" or "Lead Plaintiffs") move pursuant to Fed. R. Civ. P. 23 for final approval of (i) the proposed Settlement of this Action; (ii) the proposed Plan of Allocation; and (iii) Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses, as well as Lead Plaintiffs' costs pursuant to 15 U.S.C. § 78u-4(a)(4) for their representation of the Settlement Class.[1]

## MEMORANDUM OF LAW

### I.    Preliminary Statement

After years of hard-fought litigation, Lead Plaintiffs have agreed to settle this Action for a cash payment of $6 million to compensate investors of Home Loan Servicing Solutions, Ltd. ("HLSS") and finally resolve all claims in this Action.  While courts have uniformly recognized that securities class actions are notoriously complex and risky, this case was uniquely so, and final approval of the Settlement is particularly appropriate in light of these notable factors:

The Settlement is Exceptional: The $6 million Settlement represents a recovery of 30% of total estimated damages of approximately $20 million.  As such, it greatly exceeds the Eleventh Circuit median recovery of just 2.2% of total damages.  ¶53.

The Unique Risks and Difficulties of this Action: The Court dismissed large portions of Plaintiffs' Complaint in the Omnibus Order, including four out of five categories of alleged misstatements, permitting Plaintiffs to proceed only on claims concerning HLSS's related party transactions.  ¶¶25-26.  This drastically reduced the total Class-wide damages that Plaintiffs could establish because they were left with claiming small portions of the price drop on the two remaining corrective disclosures, rather than the majority of the price drop on the four corrective disclosures as originally alleged.  ¶¶42-46.  Defendants made numerous credible arguments that damages were far less than $20 million, which posed a significant risk of lesser or no recovery if

---

[1] Capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated June 9, 2017 (Dkt. No. 107), or the accompanying Declaration of Joseph E. White, III (the "White Decl.").  All "¶__" references are to the White Declaration unless otherwise indicated, and all references to "Ex. __" are to the exhibits attached to the White Declaration.

the litigation continued.   ¶¶60-75.   In the face of these obstacles, Lead Plaintiffs and Lead Counsel remained steadfast, ultimately securing an excellent recovery for the Settlement Class.

Extensive Litigation Efforts: The Settlement is the product of over two years' of diligent and complex work by Lead Plaintiffs and Lead Counsel, including an extensive investigation into the Ocwen Complex and HLSS's alleged wrongdoing, the identification and interviews of potential witnesses, consultation with nationally recognized experts in the fields of market efficiency, loss causation, and damages (including Professor S.P. Kothari, the Gordon Y Billard Professor of Accounting and Finance at the MIT Sloan School of Management), reviewing and analyzing over one million pages of documents, and preparing for fact witness depositions, thereby gaining an in-depth knowledge of this Action.   ¶¶29-32; 37-47.

Unanimous Class-Wide Support. While the deadline for objections has not passed, the Settlement Class to date has unanimously approved, and not one member of the Settlement Class has objected to, the Settlement, the Plan of Allocation and the requested fees and expenses.   Ex. 4 at ¶20.

Arm's-Length Settlement Negotiations. The Settlement is the product of the Parties' extensive, arm's-length negotiations conducted under the auspices of the Hon. Layn R. Phillips, a former federal judge and renowned mediator.   ¶¶48-51.

In sum, the Settlement easily satisfies every relevant standard for final approval under Fed. R. Civ. P. 23, and is more than "fair, adequate and reasonable" under controlling Eleventh Circuit precedent.   The Plan of Allocation is likewise a fair and reasonable method of distributing the Settlement proceeds to Settlement Class Members.   Moreover, the fee request of one-third of the Settlement Fund is reasonable and fully supported by all *Camden* factors, and is also similar to awards in comparable cases.

Accordingly, Lead Plaintiffs respectfully ask this Court to approve the Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses.

## II.   The Court Should Approve the Settlement

In determining whether to approve a class action settlement under Rule 23(e), the Court looks to whether it is "fair, adequate, reasonable and not the product of collusion." *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).   The Eleventh Circuit has held that in making this determination, courts should consider the following six factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).

In evaluating a settlement, the Court "is entitled to rely on the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009). The Court "will not substitute its business judgment for that of the parties; [instead] 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

### A.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. "In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp*, 2009 WL 4042928, at *9 (citing *Bennett*, 737 F.2d at 987 n.9). Courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." W. Rubenstein, A. Conte, & H. Newberg, 4 *Newberg on Class Actions* § 11:51 (4th ed. 2010).

Here, the record is clear that the Settlement is the product of extensive, good faith, arm's-length negotiations between experienced counsel, conducted under the auspices of Judge Layn Phillips, a retired federal judge and a highly respected and experienced mediator. Indeed, even after the parties accepted Judge Phillips's mediator's recommendation and reached an agreement to settle the litigation, the Parties engaged in extensive negotiations to finalize the comprehensive settlement documentation required under Rule 23. Thus, the Settlement negotiation process demonstrates beyond question that there was no fraud or collusion. *See Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or

collusion" where a "settlement [was] the product of . . . an arm's-length, 'protracted and contentious' negotiation with a mediator").

     **B.**     **Application of the *Bennett* Factors Supports Approval of the Settlement**

          **1.**     **The Likelihood of Success at Trial Supports Final Approval**

In assessing the first *Bennett* factor, "the Court can limit its inquiry to determining 'whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement.'" *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 (court need not determine if the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."). Here, while Lead Plaintiffs believe that their allegations against the Defendants are meritorious, they faced significant obstacles to establishing their claims.

The Omnibus Order severely impacted Plaintiffs' ability to establish damages and loss causation. As detailed in the White Declaration, Plaintiffs alleged that Defendants made five separate categories of misstatements over the course of nearly three years. ¶¶21-22. The Court's Omnibus Order, however, dismissed four out of those five categories, allowing Plaintiffs to proceed only on the misstatements regarding HLSS's related party transactions (the "Related Party Statements"). ¶¶25-26. These statements included HLSS's representations that it had policies and procedures for monitoring possible related-party transactions with other companies in the Ocwen Complex, and that Erbey recused himself from these related-party transactions. But the Court was skeptical with respect to Plaintiffs' ability to establish loss causation for the Related Party Statements, noting that it was "unclear as to which events are being proffered as partial disclosures of the Related Party Statements." Omnibus Order at 16.

Because only the Related Party Statements remained actionable, Plaintiffs could not attribute any damages to the four other categories of dismissed statements. Indeed, Plaintiffs had originally alleged four corrective disclosures, but close consultation with Prof. Kothari and significant amounts of research and analysis showed that two of those disclosures – on October 21, 2014 and January 12, 2015 – had nothing to do with the Related Party Statements and instead concerned the allegations that the Court dismissed. Plaintiffs were therefore left with two corrective disclosures: the December 22, 2014 NYDFS Consent Order and the January 23, 2015 announcement that BlueMountain served HLSS with a notice of default. Significantly, however,

in addition to the Related Party Statements, each of these disclosures would also have allegedly corrected misstatements in the other four categories of dismissed statements, had those misstatements not been dismissed. The NYDFS Consent Order addressed a wide array of 13 topics in addition to the related party transactions. Cmplt. ¶88(a)-(o). Meanwhile, the BlueMountain notice of default was primarily based on Ocwen's servicing practices and only briefly referenced the related party transactions as they were discussed in the December 22, 2014 NYDFS Consent Order. ¶¶45, 63, 66. Further, the BlueMountain notice of default was announced on the same day that the CDBO announced that it would no longer seek to suspend Ocwen's ability to do business in California. Cmplt. ¶¶112, 113. Accordingly, Prof. Kothari had to disaggregate the impact of all of this confounding information on the price of HLSS's stock, and was therefore able to incorporate only a small portion of the stock price decline into his damages calculations. ¶¶43-46. Even then, Defendants argued that HLSS's stock price decline following NYDFS Consent Order – about 5%, or $1.00 – was statistically insignificant taking into account the movement of the market as a whole, the market forces related to HLSS's industry, and the Ocwen-specific nature of the disclosure.

The Related Party Statements were made over the span of approximately 16 months, not the nearly 3-year long Class Period as originally alleged; indeed, the first Related Party Statement did not occur until over a year into the Class Period. This would have resulted in a much shorter Class Period had the case proceeded to the class certification stage, and the timing of the actual related party transactions thus became a hotly contested issue. Plaintiffs would face an uphill battle in establishing the falsity, scienter, and loss causation elements on the remaining actionable claims since certain of the Flow Transactions occurred in 2012 and early 2013 – prior to the first Related Party Statement in April 2013. And despite the fact that the SEC imposed a Cease and Desist order on HLSS on October 5, 2015 (ten months after the Class Period ended), it was issued under Section 13 of the Exchange Act, which does not require a finding of scienter. The SEC Order further attributed Erbey's alleged approval of related party transactions to "control deficiencies," which could amount to non-actionable mismanagement claims. Indeed, Defendants have argued that Erbey's execution of certain documents were mere ministerial matters executed pursuant to the terms of the initial substantive agreements from which he had recused himself. Thus, despite Lead Plaintiffs' arguments that Erbey actually signed documents approving related party transactions, it is possible that the finder of fact would agree with

Defendants that Erbey properly recused himself from all related party transactions, or that he did not act with scienter or fraudulent intent.

Given these contentions, Lead Plaintiffs faced a risk that a jury could find that Defendants did not act with any fraudulent intent.  While Lead Plaintiffs believe that they would successfully overcome Defendants' assertions, there is no question that these were credible arguments that could have been accepted by the Court at summary judgment or the jury at trial.

### 2.       The Settlement Amount is Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'"  *Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999).

The $6 million Settlement represents a recovery of 30% of total damages of $20 million, which by any measure is an excellent result.  The recovery is larger in absolute terms than the 2007-2016 median settlement in the Eleventh Circuit of $5.2 million, and as a percentage of total estimated damages, it is substantially greater than the Eleventh Circuit's median recovery of 2.2% during the same time period.[2]  Moreover, the $6 million recovery completely exhausted the Company's insurance policy, which had less than $5 million in coverage remaining at the time of Settlement.

Importantly, when considering the significant liability and loss causation risks discussed above, which could have easily reduced damages to an amount less than the Settlement Amount, or even to zero, the Settlement exceeds the high end of any "range of reasonableness."  Indeed, courts routinely approve class action settlements representing significantly lower percentages of recoverable damages.  *See, e.g.*, *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1344-45 (finding that settlement providing 9% of class's potential recovery was reasonable); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (finding that settlements in the range of 3% to 7% of estimated losses in securities cases are common and reasonable).

### 3.       The Complexity, Expense and Likely Duration of Continued Litigation Strongly Support Approval

This Action has been challenging and complex given the complicated facts and law at issue.  Moreover, based on the volume of evidence obtained and reviewed (including over

---

[2] Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*, at 23 (2017).

750,000 documents consisting of over one million pages), the complexity of the issues involved, and the tenacity of Defendants and their counsel, Lead Plaintiffs reasonably expected that the continued prosecution of the Action through the completion of discovery, summary judgment, and trial would have involved substantial additional work and expense that would not have necessarily resulted in a recovery for the Class.

To obtain a judgment at trial, Lead Plaintiffs would need to certify a class and complete fact and expert discovery (including taking numerous depositions of HLSS employees, the Individual Defendants, and other fact witnesses, and preparing and exchanging expert reports on issues such as damages).  Lead Plaintiffs would then need to brief the inevitable summary judgment motions, *Daubert* motions and other pre-trial motions.  Trial would be complex and expensive, requiring significant factual and expert testimony to prove the elements of Lead Plaintiffs' claims.  Even after these protracted and expensive efforts, the Class might obtain a result less than the Settlement recovery.

Importantly, even a jury verdict would not guarantee the recovery of damages for the Class that this $6 million cash recovery does.  *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (Ungaro, J.) (overturning jury verdict in favor of plaintiff class and granting judgment for defendants as a matter of law).  Defendants would undoubtedly appeal any favorable verdict, and the appellate process could last several years, with no assurance of a favorable outcome for the Class.

### 4.      The Reaction of the Class Strongly Supports Approval

The positive reaction of class members, and the absence of substantial objections, "is strong evidence of the propriety and acceptability of that request."  *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).  The Court-ordered deadline for submitting objections and requests for exclusions is October 27, 2017.  To date, no Class members have objected to the Settlement, and only one Class member has requested exclusion from it, although that exclusion is invalid because it contains no data supporting the contention that the individual purchased the shares during the Class Period.  Lead Plaintiffs will file reply papers on November 10, 2017 to address any objections that may be received after the date of this filing.

### 5.      The Stage of the Proceedings Strongly Supports Approval

In assessing the stage of the proceedings at which a settlement is achieved, "[t]he relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and

weaknesses of their claims and defenses." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *69-70. Here, the Settlement was reached after two and a half years of hard-fought litigation, and after Lead Plaintiffs conducted extensive fact discovery, including the review and analysis of over one million pages of relevant documents.  ¶¶37-41.  Indeed, Plaintiffs were preparing to conduct depositions of key fact witnesses as the Action settled.  ¶32.

Plaintiffs also closely consulted with Prof. Kothari on issues of market efficiency, loss causation, and damages.  ¶¶42-47.  Lead Plaintiffs opposed two separate motions to dismiss, conducted numerous meet and confers with Defendants on discovery matters, and participated in extensive settlement negotiations.  By the time the Settlement was reached, each side had sufficient information to assess the strengths and weaknesses of its claims and "was well aware of the other side's position and the merits thereof." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1332 (S.D. Fla. 2001).

### C.    The Recommendations of Experienced Counsel and Lead Plaintiffs Heavily Favor Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable and adequate, the Court may rely on the judgment of counsel and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330.  Here, Lead Counsel are highly experienced in litigation of this type, are well-informed about the strengths and weaknesses of this case following years of litigation, and strongly endorse the Settlement and believe that it represents an excellent recovery for the Settlement Class.  ¶87.

Moreover, Lead Plaintiffs, which are sophisticated institutional investors, closely supervised this litigation and strongly endorse the Settlement.  *See* Dew Decl. ¶¶3-5 (Ex. 1); Frost Decl. ¶¶3-5 (Ex. 2); Olish Decl. ¶¶3-5 (Ex. 3).  The endorsement of a settlement by Lead Plaintiffs that have played an active role in the litigation provides additional support for the Settlement's fairness.  *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs supported approval of the settlement).

Accordingly, under all of the relevant factors, the Settlement represents an excellent recovery that is, in all respects, "fair, adequate and reasonable" and should be finally approved.

### III.    The Plan of Allocation Should Be Approved

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion

between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). A plan of allocation is fair and reasonable as long as it has a "rational basis." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *10 (S.D.N.Y. Dec. 19, 2014). In determining whether a plan of allocation is fair and reasonable, courts give weight to the opinion of experienced counsel. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014).

Here, the proposed Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund among eligible members of the Settlement Class who submit valid Claim Forms. It was developed based on Plaintiffs' damages expert's analysis of those allegations that were not dismissed by the Omnibus Order. The details of the Plan of Allocation, which are set forth in the Notice, are consistent with the PSLRA and numerous other securities class actions that have been approved by courts across the country. ¶¶54-57. Under the plan, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of HLSS common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. The sum of a claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants *pro rata* based on the relative size of their Recognized Claims. Claimants who purchased shares during the Class Period but did not hold those shares through at least one partial corrective disclosure will have no Recognized Loss Amount as to those transactions. *See Dura Pharms. v. Broudo*, 544 U.S. 336, 342 (2005).

Importantly, no Class members have objected to the Plan of Allocation to date. Accordingly, Lead Plaintiffs submit that the Plan of Allocation is fair, adequate and reasonable and should be approved by the Court.

## IV.    Certification of a Settlement Class is Warranted

Lead Plaintiffs have already fully briefed the requirements of Rules 23(a) and (b)(3) in their motion for preliminary approval. Since the Court, having reviewed those requirements, has preliminarily granted class certification, Lead Plaintiffs incorporate by reference the briefing already filed rather than again producing the applicable law and facts here. No facts have emerged since the Court preliminarily certified the Class that would warrant further inquiry.

## V.    Notice to the Class Satisfied Rule 23 and Due Process

Notice to the Settlement Class of the proposed Settlement satisfied Rule 23's requirement

of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

In accordance with the Court's Order Preliminarily Approving Proposed Settlement and Providing for Notice (Dkt. No. 112), the Claims Administrator began mailing copies of the Notice Packet to potential Settlement Class Members and their nominees on July 3, 2017, and more than 75,406 Notice Packets have been mailed to date. Ex. 4 at ¶¶8-10.  The Notice advised potential Settlement Class Members of, among other things: (i) their right to exclude themselves from the Settlement Class; (ii) their right to object to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fees and expense request; and (iii) the method for submitting a Claim Form in order to be eligible to receive a payment from the proceeds of the Settlement. Ex. 4-A.  In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on July 3, 2017, and copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint have been posted to the website established for the Action, www.HLSSSecuritiesLitigation.com. Ex. 4-B.

The Notice program satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (*Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005)), and it was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## VI.    Lead Counsel's Fee and Expense Request is Fair and Reasonable

In undertaking this difficult and costly litigation on a fully contingent basis, Lead Counsel faced numerous challenges to establishing liability and damages that raised serious risks of no recovery, or a significantly lesser recovery than $6 million.   The prosecution and settlement of this Action required extensive efforts on the part of Lead Counsel, particularly given the complexity of the legal and factual issues and the vigorous defense by Defendants and their formidable defense firms.  The risk of no recovery was very real here, and there was no guarantee that the claims would survive summary judgment, much less succeed at trial.

Despite these significant risks, Plaintiffs' Counsel worked more than 7,500 hours, and incurred unreimbursed expenses of $612,986.62 – including over $264,000 in experts' fees – over the course of two and a half years, to achieve the Settlement.  In light of the recovery

obtained, the time and effort devoted by Lead Counsel, the complexity and amount of work performed, the skill and expertise of counsel, and the risks, Lead Counsel respectfully submit that the requested award of 33-1/3% of the Settlement Fund and reimbursement of Litigation Expenses is fair and reasonable, and well within the range of attorneys' fees awarded by federal courts in similar complex contingency cases.[3]  To date, no Settlement Class member has objected to the fee and expense request, and Lead Plaintiffs support the fee request and believe it to be fair and reasonable.  *See* Dew Decl. ¶6(Ex. 1); Frost Decl. ¶6 (Ex. 2); Olish Decl. ¶6 (Ex. 3).

### A.   A Reasonable Percentage of the Recovery is the Appropriate Method for Awarding Attorneys' Fees

Courts have long recognized that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The Eleventh Circuit held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  In addition, courts recognize that, in addition to providing just compensation, fee awards serve to encourage "[a]ttorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed."  *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006).

### B.   The *Camden* Factors Confirm that the Fee Request is Fair and Reasonable

The Eleventh Circuit recommends that district courts consider several factors to determine whether a requested percentage award is reasonable, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] The time, lodestar, and expense amounts are comprised of the time, lodestar, and expenses of Saxena White and of the Law Offices of Curtis V. Trinko, LLP.  Each firm's time, lodestar, and expenses are broken out individually in Exs. 5 and 6.  The Trinko Firm served as Saxena White's local counsel in the Southern District of New York before Judge Marrero transferred this Action to the Southern District of Florida.  *See* Ex. 6.

*Camden I*, 946 F.2d at 772 n.3. *Camden I* also recognized that a court may additionally consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Id.* at 775.

### 1.    The Time and Labor Required Support the Requested Fee

Plaintiffs' Counsel expended 7,548.55 hours in this litigation with a resulting lodestar of $3,395,012.00.   ¶92; Exs. 5, 6.   The time and labor expended by Plaintiffs' Counsel amply support the requested fee. *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, at *26 (S.D. Fla. Oct. 14, 2016) (finding that the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported counsel's fee request).

The White Declaration details the time, labor and skill that Plaintiffs' Counsel devoted to the successful prosecution of the Action.  As set forth therein, Lead Counsel:

i)    conducted a comprehensive factual investigation of the claims at issue in the Action, which included, among other things, a review of all relevant public information, and interviews with possible witnesses;

ii)    prepared and filed the detailed and particularized First Consolidated Complaint based on Lead Counsel's factual investigation, as well as the subsequent Amended Consolidated Class Action Complaint;

iii)    vigorously defended two motions to dismiss;

iv)    prepared and served document requests on Defendants and third parties;

v)    participated in extensive correspondence and numerous meet and confers between the Parties concerning discovery disputes;

vi)    reviewed and analyzed over a million pages of documents produced by Defendants and third parties in discovery;

vii)    coordinated Lead Plaintiffs' responses to Defendants' wide-ranging document requests; and

viii)    participated in extensive settlement negotiations with the assistance of the mediator, former Judge Phillips, which included an in-person mediation session in New York, numerous telephonic settlement discussions, ex parte submissions to the mediator, and the exchange of information regarding the Parties' positions on damages and liability.

¶90.

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 33-1/3% award. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Here, the requested one-third fee award for this work ($2 million), represents a ***substantial negative multiplier*** of 0.59 on Plaintiffs' Counsel's total lodestar. This negative multiplier is well below the multipliers that this Court has approved in the past. *Schultz v. Applica Inc.*, No. 06-cv-60149 (S.D. Fla. Jan. 14, 2008) (Dimitrouleas, J.) (approving 2.25 multiplier). Ex. 7 at 7.

### 2.    The Difficulty of the Issues Support the Requested Fee

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law (*Ressler*, 149 F.R.D. at 654), and "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *See also In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). In regards to securities class actions, courts "have long recognized that such litigation is notably difficult and notoriously uncertain." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 179, 194 (E.D. Pa. 2000) (noting the "inherently complicated nature of large class actions alleging securities fraud" and that in private fee negotiations "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

This Action was no exception. Lead Plaintiffs and Lead Counsel faced a number of challenging issues, the resolution of any of which in Defendants' favor could have resulted in no recovery for the Class. As discussed above and in the White Declaration, Plaintiffs and Lead Counsel faced significant issues in establishing loss causation and damages in light of the Omnibus Order that dismissed large portions of the Complaint and cut significant amounts of damages. Plaintiffs' counsel faced additional hurdles proving their loss causation theory, which was that the Ocwen-specific disclosures in the December 2014 NYDFS Consent Order (that identified no related-party transactions entered into by HLSS) caused HLSS's stock price to drop. Defendants also vigorously contested the scienter element, for example, arguing that Erbey's execution of certain documents which approved related party transaction were ministerial matters executed pursuant to the terms of the initial substantive agreements from

which he had properly recused himself. Indeed, Defendants had a compelling argument to present to the jury: that while the SEC Order found control deficiencies that contributed to the related-party transactions, it attributed these to negligence and not to fraudulent intent.

Had the litigation continued, Defendants would have contested these issues through summary judgment, trial, and any appeals. *See Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *27 (risk of "successfully maintain[ing] class certification through trial, and prov[ing] damages, requiring additional complicated expert testimony" supported counsel's fee award). Thus, there was a real risk that the Court on summary judgment, or a jury after trial, could have found no violations of the securities laws or damage to the Class. Notwithstanding these obstacles, Lead Counsel achieved an excellent result for the Settlement Class, thus strongly supporting the requested fee award.

### 3. The Reaction of Lead Plaintiffs and the Class Support the Request

In enacting the PSLRA, Congress encouraged institutional investors to serve as lead plaintiffs and direct the litigation, including selecting and monitoring class counsel. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). Accordingly, "in a PSLRA case . . . a fee request that has been approved and endorsed by properly-appointed lead plaintiffs . . . enjoys a presumption of reasonableness." *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 261 (E.D. Va. 2009).

Here, Lead Plaintiffs are sophisticated institutional investors who closely supervised the litigation and Lead Counsel, and have approved the requested fee as fair and reasonable. *See* Dew Decl. ¶¶3-7 (Ex. 1); Frost Decl. ¶¶3-7 (Ex. 2); Olish Decl. ¶¶3-7 (Ex. 3). Lead Plaintiffs' endorsement supports approval of the fee. *See In re Carter's, Inc. Sec. Litig.*, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor"); *In re NU Skin Enters., Inc*., 2016 WL 6916486, at *2 (D. Utah Oct. 13, 2016) (same).

Further, no member of the Settlement Class has, to date, filed an objection to the Settlement. The lack of any objection is itself important evidence that the requested fee is fair. *See Pinto v. Princess Cruise Lines, Ltd*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) ("That this sizeable class did not give rise to a single objection on the fees request further justifies the full award"); *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request).

4.      **The Skill, Experience, Reputation and Ability of the Attorneys Support the Fee Request**

The Court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

As demonstrated by its Firm Resume, Saxena White is qualified and experienced in complex class action litigation involving claims under the federal securities laws. Ex. 5-3. Saxena White's considerable litigation skills were required and called upon here. Given the complexity of the Action and the presence of numerous difficult and contested issues, it took highly skilled counsel to represent the Settlement Class and bring about the excellent recovery that has been obtained.

This Court should also consider the "quality of the opposition the plaintiffs' attorneys faced" in awarding Lead Counsel a fee. *Sunbeam*, 176 F. Supp. 2d at 1334; *see also Ressler*, 149 F.R.D. at 654. Here, Defendants were represented by two of the country's most prestigious and respected corporate defense firms, Weil, Gotshal & Manges LLP and Sullivan & Cromwell LLP. Lead Counsel's ability to obtain a favorable Settlement despite this formidable legal opposition confirms the quality of the representation.

5.      **The Preclusion of Other Employment Supports the Fee Request**

The considerable amount of time spent prosecuting this case – over 7,500 hours – was time that Plaintiffs' Counsel could not devote to other matters. Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee.

6.      **The Customary and Contingent Nature Support the Request**

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The contingent nature of Plaintiffs' Counsel's fees should be given substantial weight in assessing the requested fee. Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining a fee award:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and

> nonpayment in a class action are extremely high.  Cases recognize that attorneys'
> risk is "'perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also In re Friedman's Inc. Sec. Litig.*, 2009 WL 1456698, at

*3 (N.D. Ga. May 22, 2009) ("The contingent nature of fees in this case should be given

substantial weight in assessing the requested fee award."); *Behrens v. Wometco Enterprises, Inc.*,

118 F.R.D 534, 548 (S.D. Fla. 1988)) ("A contingency fee arrangement often justifies an

increase in the award of attorneys' fees.").

"Lawyers who are to be compensated only in the event of victory expect and are entitled

to be paid more when successful than those who are assured of compensation regardless of

result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).  This is so because of the risk

that after investing thousands of hours, plaintiffs' counsel may receive no compensation

whatsoever.  Indeed, *Behrens* notably explains:

> In a securities fraud action, a contingency fee arrangement has added significance.
> The federal securities laws are remedial in nature and, in order to effectuate their
> statutory purpose of protecting investors and consumers, private lawsuits should
> be encouraged.  If the ultimate effectiveness of these remedies is to be preserved,
> the efficacy of class actions and of contingency fee arrangements — often the
> only means of legal representation available given the incredible expense
> associated with these actions — must be promoted.

118 F.R.D. at 548.

Success in contingent litigation like this is never assured.  In other cases, plaintiffs'

counsel have suffered major defeats after years of litigation in which they expended millions of

dollars in time and expenses and received no compensation at all, even after a trial victory.  *See*,

*e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning jury verdict);

*BankAtlantic*, 2011 WL 1585605, at *1 (same).  The substantial risks here justify the fee request.

**7.      The Time Required to Reach the Settlement Supports the Fee Request**

A substantial amount of time was required to resolve this action, which has been ongoing

for over two years.  Lead Counsel had to vigorously oppose multiple motions to dismiss, conduct

significant fact discovery (including the collection and review of over one million pages of

documents), and closely consult with their experts on a variety of critical issues before serious

settlement discussion could even begin.  The parties then engaged in an extensive, day-long

mediation session, followed by multiple additional meetings with Judge Philips. The significant

amount of time expended on this case further supports the requested fee award, particularly where the requested fee is less than the lodestar value of the time counsel expended. *Ressler*, 149 F.R.D. at 656 (course of action "reflect[s] the care and deliberation with which plaintiff's counsel approached the entire settlement process.").

### 8. The Amount Involved and Results Achieved Support the Request

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655. As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case. It was only through the extensive efforts of Lead Counsel that allowed Lead Plaintiffs to achieve the $6 million cash Settlement. Moreover, the Settlement exceeds the median settlement amount of $5.2 million in the Eleventh Circuit, and represents a 30% recovery of total estimated damages.

### 9. The Undesirability of the Case Supports the Fee Request

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. *Checking Account Overdraft*, 830 F. Supp. 2d at 1364. There are risks inherent in financing and prosecuting complex litigation of this type. When Lead Counsel undertook representation of Plaintiffs in this action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in light of the uncertainty of ever obtaining a meaningful recovery – or any recovery at all. Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter most firms. Thus, the "undesirability" of the case also weighs in favor of the requested fee.

### 10. The Nature and Length of the Professional Relationship with the Client Supports the Fee Request

Saxena White attorneys have represented Ft. Lauderdale Police and West Palm Beach for over a decade, and St. Louis for over 7 years. It was Lead Plaintiffs who selected Saxena White to represent them in this case. Lead Plaintiffs were highly involved with every aspect of the case from the beginning. *See* Dew Decl. ¶3 (Ex. 1); Frost Decl. ¶3 (Ex. 2); Olish Decl. ¶3 (Ex. 3). Lead Counsel have also been involved since the beginning and have dedicated their efforts to protect the best interests of Plaintiffs and the Class. *Millsap v. McDonnell Douglas Corp.*, 2003

U.S. Dist. LEXIS 26223, at \*39 (N.D. Okla. May 28, 2003) (observing that counsel's substantial involvement in the litigation satisfies this factor).

> **11.    The Requested Fee Is Fair and Reasonable Compared to Similar Actions**

The Eleventh Circuit has explained that "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. (noting that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded"). Notably, in "securities class action settlements, courts have awarded attorneys' fees of 30% or 33%." *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at \*23-25 (finding that "30% is an appropriate benchmark here, given the complexity of this matter and the skill that is required," and ultimately adjusting the fee upward to 33.3%). The Eleventh Circuit has stated that an award "may be adjusted in accordance with the individual circumstances of each case." *Camden I*, 946 F.2d at 775; *see also Waters*, 190 F.3d at 1294-95 (the benchmark "should be 30%" and then adjusted upward to 33.3% based on the facts of the case).

A one-third award is particularly appropriate here because of the highly complex issues involved, the substantial investment of time and resources, the result achieved, the approval of Lead Plaintiffs, and the risks in the litigation. Indeed, a review of percentage fee awards in securities class actions and other comparable class actions in this Circuit – and by this Court – confirms that the one-third fee sought by Lead Counsel is fair and reasonable. *Miller v. Dyadic Int'l, Inc.*, No. 07-cv-80948 (S.D. Fla. Jul. 28, 2010) (awarding 33-1/3% of $4.8 million settlement as "fair and reasonable") (Dimitrouleas, J.) (Ex. 7 at 1); *Schultz v. Applica Inc.*, No. 06-cv-60149 (S.D. Fla. Jan. 14, 2008) (Dimitrouleas, J.) (awarding 33% of settlement fund as "fair and reasonable under the 'percentage-of-recovery' method") (Ex. 7 at 7); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming district court award of 33-1/3% attorneys' fee of a $40 million common fund).[4] Significantly, a one-third fee award

---

[4] *See also In re Profit Recovery Group Int'l, Inc. Sec.* Litig., No. 00-cv-1416 (N.D. Ga. May 26, 2005) (awarding 33-1/3% of settlement fund as "fair and reasonable") (Ex. 7 at 50); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-1317 (S.D. Fla. April 19, 2005) (Seitz, J.) (awarding fees of 33-1/3 % of nearly $75 million settlement fund) (Ex. 7 at 74, 76); *In re Clarus Corp. Sec. Litig.*, No. 00-cv-2841 (N.D. Ga. Jan. 6, 2005) (awarding 33-1/3% of settlement fund as "fair and reasonable") (Ex. 7 at 86); *In re Theragenics Corp. Sec. Litig.*, No. 99-cv-141 (N.D.

here will result in Lead Counsel receiving a substantial negative multiplier of 0.59, far less than its lodestar.

### C.     Lead Counsel's Expense Reimbursement Request is Fair and Reasonable

Lead Counsel also request reimbursement of $612,363.62 in Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting the Action.  Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement."  *Ressler*, 149 F.R.D. at 657.

The expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation.  Approximately 43% of the total expenses are comprised of expert fees, including Prof. Kothari and another consulting damages expert.  As discussed above, the Omnibus Order's dismissal of much of the Complaint made establishing loss causation and damages on the Related Party Statements absolutely critical – and immensely complicated.  The analysis of the two corrective disclosures left in the case was laborious and fact-intensive, and was made more even more difficult because the experts had to isolate the effect of the corrective information in the disclosures from multiple pieces of confounding information that impacted HLSS's stock price.  Moreover, in addition to consulting with Lead Counsel on loss causation and damages, Plaintiffs would have put Prof. Kothari forward as their market efficiency expert at class certification.   Prof. Kothari was well-along in his analysis when the Parties reached the Settlement.   Other expenses include mediation fees, an electronic document database and support, online research, court fees, telephone, photocopying, postage, and out-of-town travel.[5]

---

Ga. Sep. 29, 2004) (awarding 33-1/3% of settlement fund as "fair and reasonable") (Ex. 7 at 96, 104); *Cheney v. Cyberguard Corp.*, No. 98- cv-6879 (S.D. Fla. May 11, 2004) (Gold, J.) (awarding 33-1/3% of settlement fund as "fair and reasonable") (Ex. 7 at 124); *In re Medirisk, Inc. Sec. Litig.*, No. 98-cv-1922 (N.D. Ga. Mar. 22, 2004) (awarding 33-1/3% of settlement fund as "fair and reasonable") (Ex. 7 at 135); *In re Managed Care Litig.*, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (Moreno, J.) (awarding fees and costs of 35.5% of $301 million settlement fund); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-cv-2152 (S.D. Fla. May 30, 2003) (Gold, J.) (awarding fees of 33-1/3 % of $77.5 million settlement fund) (Ex. 7 at 145); *Allapattah*, 454 F. Supp. 2d at 1189 (Gold, J.) (awarding attorneys' fees of 31-1/3 % of $1.06 billion settlement fund).

[5]  Approximately 46% of Lead Counsel's expenses relate to electronic discovery and the document review and analysis platform.  As described in the White Declaration, the amount and type of discovery produced in this case required a sophisticated electronic document hosting system with powerful analytic capabilities.  Lead Counsel leveraged this state-of-the-art system to provide Prof. Kothari and its experts with the exacting detail and analysis needed to complete their damages and loss causation analysis.

A complete categorical breakdown of the expenses incurred by Plaintiffs' Counsel is included in Exs. 5 and 6. These expense items are billed separately by Plaintiffs' Counsel, and these charges are not duplicated in the firms' hourly billing rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $650,000. *See* Ex. 4-A. The total amount of expenses requested by Lead Counsel is $617,158.62, which includes $612,986.62 in reimbursement of Litigation Expenses incurred by Plaintiffs' Counsel and $4,172.00 in reimbursement of time collectively incurred by Lead Plaintiffs in their representation of the Settlement Class, an amount below the figure listed in the Notice. To date, there has been no objection to the request for expenses.

Because the Litigation Expenses incurred by Lead Counsel are of the type for which reimbursement is routinely ordered in class actions and were essential to the successful prosecution and resolution of the Action, reimbursement of these expenses should be granted.

### D. Lead Plaintiffs' Request for Reimbursement of Costs Directly Related to Their Representation of the Settlement Class is Fair and Reasonable

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, Fort Lauderdale, West Palm Beach, and St. Louis seek reimbursement awards of $600, $2,900, and $672, respectively, for the reasonable time dedicated by their employees to furthering and supervising the Action, including time spent supervising lead counsel and responding to Defendants' multiple discovery requests. *See* Dew Decl. ¶10 (Ex. 1); Frost Decl. ¶10 (Ex. 2); Olish Decl. ¶10 (Ex. 3). Numerous courts have approved reasonable awards to compensate lead plaintiffs for their efforts on behalf of a class. *See*, *e.g.*, *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *35 (awarding $15,000 to each class representative as "fair and reasonable").

### VII. Conclusion

For all of these reasons, Lead Plaintiffs respectfully request that the Court grant final approval of: (i) the Settlement; (ii) the Plan of Allocation; and (iii) Lead Counsel's fee and expense award and Lead Plaintiffs' reimbursement award. A Proposed Order is attached as Ex. 8.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Lead Plaintiffs certify that they have conferred with counsel for Defendants. Defendants agree that the Court should grant final approval of the proposed Settlement, but take no position on approval of the plan of allocation or the request for attorneys' fees and expenses.

Dated: October 13, 2017                    Respectfully submitted,

                                           **SAXENA WHITE P.A.**

                                           */s/ Joseph E. White, III*
                                           Maya Saxena (Fla. Bar No. 0095494)
                                           Joseph E. White, III (Fla. Bar No. 621064)
                                           Lester R. Hooker (Fla. Bar No. 0032242)
                                           Brandon T. Grzandziel (Fla. Bar No. 0058732)
                                           Adam D. Warden (Fla. Bar No. 0873691)
                                           5200 Town Center Circle, Suite 601
                                           Boca Raton, Florida  33486
                                           Phone: (561) 394-3399
                                           Fax: (561) 394-3382

                                           -and-

                                           Steven B. Singer
                                           4 West Red Oak Lane, Suite 312
                                           White Plains, New York 10604
                                           Phone: (914) 437-8551
                                           Fax: (888) 631-3611

                                           *Lead Counsel for Lead Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on October 13, 2017, I caused the foregoing to be electronically filed the with the CM/ECF system, which will send a notice of electronic filing to all counsel of record by operation of the Court's electronic filing system.
     .


                                        */s/ Joseph E. White, III*

                                        Joseph E. White, III